The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALBIREO ENERGY LLC, *et al.*,

    Plaintiffs,

v.

IVAN ARON, *et al.*,

    Defendants.

NO. 25-cv-2285-BJR

**ORDER DENYING PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

Plaintiffs, Albireo Energy LLC and Albireo Holdings Inc. (collectively, "Albireo") brought this action against three former employees—Ivan Aron, Ryan Cowper, and Gregory Siefferman—and a competitor, ATS Automation Inc., alleging breach of contractual obligations and fiduciary duties, misappropriation of trade secrets, unfair competition, tortious interference with business expectancy and with contract, and civil conspiracy. Am. Compl., ECF No. 3. Currently pending before the Court is Plaintiffs' Motion for a Preliminary Injunction, ECF No. 13, against Ivan Aron.

ORDER DENYING PRELIMINARY INJUNCTION

- 1

Having reviewed the materials[1] and the relevant legal authorities, the Court will deny the motion. The reasoning for the Court's decision follows.

## II.    BACKGROUND

Plaintiff Albireo Energy, a wholly owned subsidiary of Albireo Holdings, provides building controls and energy services to commercial and institutional facilities across the United States and abroad. Am. Compl. ¶¶ 11-12, 14. Ivan Aron was employed by Albireo Energy as the General Manager/Vice President from August 2021 to September 2025. *Id.* ¶ 37. He is also a shareholder of Albireo Holdings. *Id.* ¶¶ 40-41, 51. Defendants Siefferman and Cowper were also employed by Albireo Energy until July and September 2025 respectively. *Id.* ¶¶ 21, 25. Defendants Aron, Siefferman, and Cowper (the "Individual Defendants") are all current employees of Defendant ATS, a direct competitor of Albireo Energy. *Id.* ¶¶ 3, 4, 6, 69. Plaintiffs allege that the Individual Defendants use confidential knowledge they learned while employed with Albireo Energy to divert Albireo Energy's business opportunities to ATS. *Id.* ¶¶ 60-63, 70, 76, 80.

Relevant to this motion, Plaintiffs allege that Defendant Aron breached multiple restrictive covenants, contained in his Non-Solicitation Agreement, Stockholders Agreement, and Separation Agreement, when he joined ATS and diverted Washington customers to ATS, specifically key accounts with Sound Transit and McKinstry Co., LLC. Am. Compl. ¶¶ 42-50, 53-58, 85-87, 107-114; Mot. 1, 3-4. Plaintiffs seek to enjoin Defendant Aron from taking further acts that "imperil Albireo Energy's trade secrets, including competing against them at ATS in the same market and soliciting Albireo Energy's employees, clients, or vendors." Mot. 13.

---

[1] Including the motion, ECF No.13; modified response in opposition, ECF No. 28-1; and Plaintiffs' reply, ECF No. 24; together with attached exhibits and declarations.

ORDER DENYING PRELIMINARY INJUNCTION

- 2

## III.   LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted). For a preliminary injunction to issue, the moving party has the burden of demonstrating all four of the following elements: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[2]

The Ninth Circuit follows a "'sliding scale' approach to evaluating the first and third *Winter* elements, [where] a preliminary injunction may be granted when there are 'serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff,' so long as 'the other two elements of the *Winter* test are also met.'" *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011)); *see also All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (referring to the original *Winter* standard and the "sliding scale" variant, the Court stated: "A party seeking a preliminary injunction must meet one of two variants of the same standard."). Further, to obtain injunctive relief, "plaintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies*, 632 F.3d at 1131.

---

[2] "Due to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development, the rules of evidence do not apply strictly to preliminary injunction proceedings." *Herb Reed Enters., LLC v. Florida Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 n. 5 (9th Cir. 2013). "In deciding a motion for a preliminary injunction, the district court 'is not bound to decide doubtful and difficult questions of law or disputed questions of fact.'" *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Indus., Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir.1964)).

ORDER DENYING PRELIMINARY INJUNCTION

- 3

## IV.  DISCUSSION

### A.    Likelihood of success on the merits

Plaintiffs must make a clear showing that they are likely to succeed on the merits. Defendant Aron argues that the agreements being asserted by Plaintiffs against him are illegal and unenforceable under Washington law. Opp'n 2, 5-11. Aron contends that the restrictive covenants are noncompetition covenants prohibited under Washington law. Opp'n 5-6 (citing RCW 49.62.010). Therefore, the Court will begin by resolving whether the restrictive covenants at issue are enforceable.

### 1.    Enforceability of restrictive covenants

Plaintiffs attached the following agreements with Aron to the Amended Complaint: (1) Confidentiality & Non-Solicitation Agreement, Ex. B; (2) Non Disclosure Agreement, Ex. C; (3) Joinder, Ex. D; (4) Amended and Restated Stockholders' Agreement, Ex. E; and (5) Separation Agreement, Ex. F. In their complaint, Plaintiffs allege that under the various agreements' restrictive covenant provisions, Aron agreed that he would not solicit Plaintiffs' employees or customers and would maintain confidential and trade secret information. Am. Compl. ¶¶ 43- 51 (citing Exs. B, C, E, F).

Under the Confidentiality & Non-Solicitation Agreement, Aron is prohibited from soliciting customers or employees during employment "and for two (2) years thereafter." Am. Compl. Ex. B. The Non Disclosure Agreement requires Aron to acknowledge that all classified, non-classified, and sensitive information belongs to Albireo Energy, to refrain from divulging such information to anyone outside the Company, and to promptly return all documents and other materials when his employment ends. *Id.* Ex. C. Under the Stockholders' Agreement, Aron is prohibited from competing with Plaintiffs and from soliciting any of Plaintiffs' clients and vendors, while he owns

ORDER DENYING PRELIMINARY INJUNCTION

- 4

shares and for 12 months thereafter. *Id.* ¶¶ 48-51 (citing Exs. D, E). And under the Separation Agreement, which was negotiated with the assistance of counsel in exchange for a severance payment of $25,052, Aron "agreed not to defame, disparage, criticize, or speak negatively about Albireo Energy, its affiliates, or its products and services, and to safeguard and not misuse Albireo's confidential information." *Id.* ¶¶ 52-55 (citing Ex. F). Aron also agreed to one-year post-employment obligations that included non-solicitation of employees or customers, and to remain bound by the prior agreements. *Id.* ¶¶ 56-58.

The Separation Agreement contains a choice-of-law provision stating that it will be governed by, and construed and enforced in accordance with, the laws of the state of Florida. Ex. F ¶ 14(a). The Stockholders' Agreement and Joinder contain a choice-of-law provision, which states that it will be governed by and construed in accordance with the laws of the State of Delaware. Am. Compl. Ex. D ¶ 6, Ex E ¶ 18. Neither the Confidentiality & Non-Solicitation Agreement nor the Non Disclosure Agreement contain any choice-of-law provision.[3] *See* Exs. B, C. Aron argues that Washington law applies to this lawsuit regardless of the contractual choice-of-law provisions. Opp'n at 6-7 (citing RCW 49.62.050).

Under RCW 49.62.050,

> A provision in a noncompetition covenant signed by an employee or independent contractor who is Washington-based is void and unenforceable:
>
> (1) If the covenant requires the employee or independent contractor to adjudicate a noncompetition covenant outside of this state;

---

[3] Plaintiffs assert that the Non-Solicitation Agreement is governed by Florida law but provide no authority to support the assertion. Reply 1; *see* Mot. 7 (citing to Florida law). The Court notes that the Confidentiality and Non-Solicitation Agreement signed by Defendant Siefferman contains a New Jersey governing law provision. Am. Compl., Ex. A.

ORDER DENYING PRELIMINARY INJUNCTION

- 5

(2) To the extent it deprives the employee or independent contractor of the protections or benefits of this chapter; or

(3) If it allows or requires the application of choice of law principles or the substantive law of any jurisdiction other than Washington state.

Washington State's anti-noncompete law was enacted based on the legislature's finding that "workforce mobility is important to economic growth and development." RCW § 49.62.005. Chapter 49.62 applies retroactively to all cases filed after January 1, 2020, regardless of when the cause of action accrued, RCW § 49.62.100, and thus it applies to this case's non-competition covenants.[4] Under the statute, noncompetition agreements are void and unenforceable unless they satisfy three statutory requirements: (1) the terms must be disclosed in writing no later than when the offer is accepted; (2) the employee's "earnings" must exceed $100,000 (adjusted for inflation); (3) the separation cannot result from being laid off (unless appropriately compensated). RCW § 49.62.020.

Here, the parties dispute whether Aron's separation was the result of a layoff. Opp'n 11; Aron Decl. ¶¶ 8-10, ECF No. 28-4; Reply 8; Thomas Decl. ¶¶ 5-10, ECF No. 26. Neither party offers evidence to support their declarations. Plaintiffs' complaint states only that he "separated from Albireo," a Separation Agreement was executed with a severance payment, and he "remains a participating Management Stockholder." Am. Compl. ¶¶ 52-54, 77. There was no allegation of "poor performance" until Plaintiffs' Reply and the accompanying Thomas Declaration. Reply 8; Thomas Decl. ¶¶ 5-10. However, Plaintiffs alleged that Aron "developed client and vendor relationships for Plaintiffs, particularly in the Washington market. These relationships enhanced

---

[4] The Court disagrees with Plaintiffs' argument that the 2024 amendments to RCW 49.62 do not apply retroactively. Plaintiff cites to a criminal case, which is inapposite.

ORDER DENYING PRELIMINARY INJUNCTION

- 6

Plaintiffs' goodwill and, in turn, increased Defendant Aron's compensation." Am. Compl. ¶ 39. Plaintiffs describe Aron's compensation as growing substantially during his four-year tenure "to over $300,000 in 2025, making him one of the highest paid executives for the company in Washington," and he "also received substantial bonuses." *Id.* ¶ 40. These allegations do not support Thomas's description of "poor performance." Thomas Decl. ¶¶ 5-10.

Under these circumstances, the Court finds that Plaintiffs have failed to make a clear showing that Aron was not laid off as he describes in his declaration regarding company layoffs occurring in June through August 2025. Further, under the current record, the Court is unable to perform calculations to determine if the severance payment is appropriate "compensation" as required by the statute. It appears that the compensation is not sufficient, based on alleged earnings of more than $300,000 per year and the severance payment of $25,052. *See* Am. Compl. ¶¶ 40, 54; RCW 49.62.020 (requiring "compensation equivalent to the employee's base salary at the time of termination for the period of enforcement minus compensation earned through subsequent employment during the period of enforcement.").

If the statutory requirements are satisfied, "the court must still consider whether enforcing the non-compete agreement is reasonable." *A Place for Mom v. Perkins*, 475 F. Supp. 3d 1217, 1227 (W.D. Wash. 2020). However, because Plaintiffs have not established the statutory requirements for the enforcement of the noncompetition covenants, the Court need not consider the reasonableness test. *Luxor Tech. Corp. v. Giga Energy, Inc.*, No. 2:26-CV-00357-TL, 2026 WL 523279, at *6 (W.D. Wash. Feb. 25, 2026).

This does not mean, however, that the Agreements' other restrictive provisions are necessarily unenforceable. According to RCW 49.62.010(4), a noncompetition covenant excludes

ORDER DENYING PRELIMINARY INJUNCTION

- 7

several other common employment provisions, which are also at issue in this case. A "noncompetition covenant" is defined broadly, as follows:

> "Noncompetition covenant" includes every written or oral covenant, agreement, or contract by which an employee or independent contractor is prohibited or restrained from engaging in a lawful profession, trade, or business of any kind. A "noncompetition covenant" also includes an agreement that directly or indirectly prohibits the acceptance or transaction of business with a customer. A "noncompetition covenant" does not include: (a) A nonsolicitation agreement; (b) a confidentiality agreement; (c) a covenant prohibiting use or disclosure of trade secrets or inventions;
> . . . .

RCW 49.62.010 (4). The statute also defines a "Nonsolicitation agreement":

> "Nonsolicitation agreement" means an agreement between an employer and employee that prohibits solicitation by an employee, upon termination of employment: (a) Of any employee of the employer to leave the employer; or (b) of any *current* customer of the employer *to cease or reduce* the extent to which it is doing business with the employer.

*Id.* at (5) (emphasis added). Courts interpret "non-solicitation" of customers narrowly, considering whether the restriction "directly or indirectly prohibits the acceptance or transaction of business with a customer." *See Luxor*, 2026 WL 523279, at *4-5 (agreeing with the defendant that restricting interactions with prospective customers or former customers renders the provision a non-competition covenant).

Here, the terminology in the Confidentiality & Non-solicitation Agreement specifically includes "seek to persuade any [] customer or prospective customer of the Company and its Affiliates to conduct with anyone else any business or activity which such customer or prospective customer conducts with the Company and its Affiliates" Am. Compl. Ex. B ¶ 3. Similarly, the language in the Separation Agreement relating to non-solicitation of customers includes "solicit,

ORDER DENYING PRELIMINARY INJUNCTION

- 8

contact [by any means], attempt to contact, or meet with any Released Party's[5] current or prospective customers for purposes of offering or accepting goods or services similar to or competitive with those offered by any Released Party." Am. Compl. Ex. F ¶ 7(b). And the language in the Stockholders' Agreement's non-competition and non-solicitation clause includes "current, former or prospective" customer. *Id.* Ex. E ¶ 9(a)(ii).

The Court finds that the customer non-solicitation restrictions "directly or indirectly prohibit[] the acceptance or transaction of business with a customer," and deems these restrictions are non-competition covenants and unenforceable. However, provisions restricting solicitation of Plaintiffs' employees, the confidentiality agreements, and the covenants prohibiting use or disclosure of trade secrets, are exempt from the definition of a noncompetition covenant.

### 2. Choice of law for exempt restrictive covenants

The parties disagree on which state's law applies to the remaining restrictive covenants; Plaintiffs argue that Florida and Delaware law applies, and Aron argues that Washington law applies. "Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (citations omitted). Similarly, "[i]n a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state." *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999) (quoting *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1164 (9th Cir.

---

[5] "Released Parties" means Albireo Energy, LLC, Albireo Holdings, Inc. ("Parent"), The Huron Fund IV L.P., The Huron Fund IV Management L.P., The Huron Fund IV Employees L.P. and Huron Capital Partners LLC; all of their past and present affiliates, parent companies, subsidiaries, investors, predecessors, successors, assigns and related companies and entities; each of their past and present shareholders, members, partners, directors, supervisors, trustees, officers, managers, employees, attorneys, advisors, agents and insurers; and all other persons and entities acting by, through or in connection with any of them. Am. Compl. Ex. F ¶ C (Definitions).

ORDER DENYING PRELIMINARY INJUNCTION

- 9

1996)). Washington choice-of-law rules generally enforce choice-of-law provisions. *Brown v. MHN Gov't Servs., Inc.*, 178 Wn. 2d 258, 263 (2013); *McKee v. AT&T Corp.*, 164 Wn. 2d 372, 384 (2008) (citing *Erwin v. Cotter Health Ctrs.*, 161 Wn. 2d 676, 695-96 (2007)). Further, the parties' chosen choice-of-law provision will only be disregarded if all three of the following conditions are met: "(1) without the choice-of-law provision, Washington law would apply; (2) the chosen state's law violates a fundamental public policy of Washington; and (3) Washington's interest in the determination of the issue materially outweighs the chosen state's interest." *Id.* (citing *Erwin*, 161 Wn. 2d at 694-95).

Here, the parties' choice-of-law arguments focused almost entirely on the non-compete provisions, and the Court has found that Washington law applies to the noncompetition agreements. To determine whether the choice-of-law provisions apply to the other restrictive covenants would require further briefing, which the Court does not deem necessary at this stage of the litigation.

### 3.    Serious questions going to the merits

Neither party meaningfully addresses the merits, offering conclusory statements and a dearth of evidence or supporting authority, nor do they address the individual causes of action asserted against Defendant Aron. Certainly, as Plaintiffs assert, an affidavit may afford the basis for a preliminary injunction, but in this case, the facts asserted in the affidavit are substantially controverted by a counter-affidavit. *See McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) ("There is no disputing that an affidavit and a complaint may be the basis for a preliminary injunction unless the facts are substantially controverted by counter-affidavits."). Because a preliminary injunction is an "extraordinary remedy," the *Winter* standard requires a "clear showing" of a likelihood of success on the merits, and speculative statements made "on information and

ORDER DENYING PRELIMINARY INJUNCTION

- 10

belief" rarely meet this "clear showing" threshold. Plaintiffs' declaration is laden with such statements. *See e.g.*, Wash Decl. ¶ 74 ("Upon information and belief, Defendant Aron solicited Albireo Energy's employees to separate and join ATS…"); ¶ 79 ("After starting with ATS, upon information and belief, Defendant Aron and one or more of the other Individual Defendants contacted McKinstry and made false and defamatory statements about Albireo Energy, including that it lacked capacity to service McKinstry needs."). Plaintiffs proffered no evidence to support these statements, nor did they make any specific factual allegations, such as detailing any specific confidential information that was taken, or trade secret misappropriated. And Aron has declared that he has complied with all confidentiality provisions and will continue to do so. Aron Decl. ¶ 15.

The Court finds that Plaintiffs have failed to make a sufficiently clear showing of likelihood of success on the merits on any of their claims against Defendant Aron.

### B.    Other *Winter* elements

Generally, district courts "must consider" all four *Winter* factors, but "[t]he first factor is a threshold inquiry and is the most important factor." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citations omitted). As such, the "'court need not consider the other factors' if a movant fails to show a likelihood of success on the merits." *Id.* (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)). Because Plaintiff has failed to show a likelihood of success on the merits for any of its causes of action, the Court, in its discretion, declines to examine the remaining *Winter* elements. Accordingly, the Court will deny the motion for preliminary injunction.

### V.    CONCLUSION

For the foregoing reasons:

    1.  Plaintiffs' Motion for a Preliminary Injunction, ECF No. 13, against Ivan Aron, is DENIED;

ORDER DENYING PRELIMINARY INJUNCTION

- 11

2.   This case shall proceed pursuant to the Case Scheduling Order, ECF No. 31.

DATED this 13th day of April 2026.

Barbara Jacobs Rothstein
United States District Judge

ORDER DENYING PRELIMINARY INJUNCTION

- 12